CBD4MCCC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     ANTRON McCRAY, et al.,
 3                   Plaintiffs,

 4           v.                              03CV9685(DAB)(RLE)

 5   THE CITY OF NEW YORK, et al.,
                     Defendants.
 6   ------------------------------x
                                        New York, N.Y.
 7                                      November 13, 2012
                                        3:05 p.m.
 8   Before:
                         HON. RONALD L. ELLIS
 9                                      U.S. Magistrate Judge

10                          APPEARANCES
     MOORE & GOODMAN
11        Attorneys for McRay, Santana, Richardson Plaintiffs
     JONATHAN MOORE
12      – and –
     MICHAEL W. WARREN
13   ROGER WAREHAM

14   BELDOCK LEVINE & HOFFMAN
          Attorneys for Salaam Plaintiffs
15   MYRON BELDOCK
     KAREN L. DIPPOLD
16   JOSHUA S. MOSKOVITZ

17   FISHER BYRIALSEN & KREIZER
          Attorneys for Wise Plaintiffs
18   JANE H. FISHER-BYRIALSEN
     Alissa Boshnack
19
     NEW YORK CITY LAW DEPARTMENT
20        Office of the Corporation Counsel
          for the City of New York
21   GENEVIEVE NELSON
          Senior Counsel
22   ANDREW MYERBERG
     PHILIP DE PAUL
23        Assistant Corporation Counsel

24

25
```

CBD4MCCC

```
1              (Case called)

2              THE COURT:  My law clerk tells me that there may have

3    been some offices that were still not up to communicating and

4    therefore belatedly found out about the conference.  With

5    respect to whether or not that was a problem for me, I did not

6    think that that was cause to change the conference.

7              First of all, it was not my intention frankly to have

8    the parties give oral argument at this conference.  I have

9    reviewed the submissions and I am prepared to rule.

10             Secondly, we believe that given the disruptions of

11   Sandy that a telephone call was the best means to get in touch

12   with individuals.  Not only were you disrupted but the court

13   was disrupted including our transmission of things to our

14   docket.

15             Finally, we certainly expected that to the extent that

16   the conference had clearly not gone forward on the date it was

17   scheduled, that we would expect that the lawyers would call us

18   and find out what plans we had made.

19             Taking all those things into account, we, we meaning

20   me, believed that we should go ahead with the conference.

21             In addition, as I have indicated to the parties, this

22   case has been pending for a long time and it's my intention to

23   make sure that discovery gets completed as expeditiously as

24   possible given the disputes that the parties have.  With

25   respect to that, before I give my rulings, I did want to put
```

3

CBD4MCCC

1    what I am going to say about the rulings in some perspective

2    and to tell you this will also give you some indication of why

3    my rulings are what they were going to be.

4           As you all know, the general discovery rule is that

5    you get discovery on any matter which is not privileged that is

6    relevant to a claim or a defense of one of the parties.  Even

7    with this description there are times when relevant information

8    that is not privileged still receives a measure of protection.

9    The way that's usually done obviously is the party who is

10   trying to protect the information makes a motion under Rule

11   26(b) seeking a protective order from the court.

12          The stipulated protective order that the parties

13   usually come to agreement on is designed to facilitate the

14   process of discovery by eliminating the need for constantly

15   coming to the court by not requiring the parties to constantly

16   make motions and, therefore, delay the matter.

17          Unfortunately in this case, the stipulated protective

18   order has not worked that magic.  Indeed, based on how many

19   times the parties have come to me with disputes about the

20   stipulated protective order, you might say that the implicit

21   contract that you had between counsel and Judge Batts has not

22   been honored by the parties and certainly has not been

23   successful.  We have had as I said numerous occasions in which

24   I have had to moderate disputes from the parties concerning

25   what has been designated confidential.  That continued court

CBD4MCCC

1    invention has contributed to the delays in resolving the case.

2            It seems to me that the heart of the problem frankly

3    is that in fashioning the protective order, the parties in

4    determining how disputes should be resolved put the onus on the

5    party who was opposing the designation of confidentiality.

6    While courts don't generally intervene in those decisions, it

7    can work either way depending on what the situation is, I find

8    that in this situation that has not worked.   Indeed, I find

9    that in part it has not worked because the city has been

10   overbroad in its designations of confidentiality.

11           In the interests of moving the matter forward, I have

12   determined that placing the onus on the party opposing the

13   designation has resulted in too many disputes.   It's resulted

14   in too many conferences.   Frankly, it's resulted in too much

15   wasted time by the parties and by the court.   So the first

16   fundamental change that I am going to make, I don't know if

17   there is any precedent for it, but I am going to change the

18   stipulated protective order.   Since you did get the court to

19   sign off on it, it's my belief that the court has the authority

20   to do this; that is, to change that portion of the stipulated

21   protective order so that the party claiming confidentiality,

22   whether it be the plaintiff or the defendant, shall have the

23   burden of maintaining that designation.

24           It is certainly true that regardless of whether or not

25   you are defending or opposing a designation, it is the court's

CBD4MCCC

1    expectation that the parties will act in good faith and

2    therefore if they are acting in good faith, whom we put the

3    burden on shouldn't make a difference.  But the best laid plans

4    of the parties and the best laid plans of the court obviously

5    did not work out in this case.

6          Because as I said implicit in that is that the parties

7    will act in good faith, that effort begins with the attorneys.

8    So from this point on, I am putting the attorneys on notice

9    that I am going to hold them personally responsible for the

10   disagreements they are going to have concerning the

11   designations of confidentiality.

12         That means that I am going to put you on notice that I

13   will hold the lawyers personally responsible, including

14   possible sanctions under 28 U.S.C. Section 1927, if in my

15   determination the positions taken by one side or the other are

16   inconsistent with their duties to the court and to this case as

17   counsel to make sure that the positions that they take with

18   regard to whether or not something should be confidential is a

19   well-founded position.  That means that the city should not

20   over-designate and that in proper cases the plaintiffs should

21   not oppose the designation of things as confidential.

22         One of the things that I found most disturbing about

23   the last conference is that at one point in the conference, the

24   plaintiffs had indicated that if the defendants were going to

25   maintain their position, that the plaintiffs were going to

CBD4MCCC

1   withhold positions that they had originally taken.

2           I will tell you that with respect to some of the

3   information that was redacted, including Social Security

4   numbers, addresses, and phone numbers, it seems to me that

5   that's the kind of classic information that is subject to

6   protective order.  Whether you call it a privilege or whether

7   or not it's a protective order under 26(c), that's the kind of

8   information that is entitled to some protection from the court.

9   It's almost such that you don't even have to explain why that

10  information should not be public knowledge.

11          Now, to the extent that it's an application under

12  26(c) or an application of what the defendants have called the

13  official information privilege, it still qualifies and

14  therefore is subject to the question of how relevant the

15  information is to the claims and defenses in the case, so that,

16  while on the surface, a telephone number might not be something

17  that should be disclosed, it does not rule out the possibility

18  that in a specific case, a telephone number may be appropriate

19  for disclosure.

20          So in that balancing, the court needs to have

21  appropriate information to make the determination.  So at least

22  with respect to the privilege claimed by the defendants, I do

23  find that the courts have recognized such a privilege and the

24  privilege, however, does require that the party requesting the

25  privilege make a threshold showing that there is some specific

CBD4MCCC

1    need for keeping the information confidential.  That can be

2    potential harm to people who are identified, potential

3    disclosure of information that is sensitive or personal.

4         With that threshold showing, then the court can turn

5    to the party who seeks to have the information and ask that

6    party to indicate why the information is important, and when I

7    say important I of course mean relevant.  That allows the court

8    to balance the harm of disclosure and the relevance of the

9    information sought.

10        With respect to the specific issues in this case,

11   because of the way the parties briefed the issues, I don't have

12   a clear sense of what the plaintiffs think is the relevant

13   portion of the information sought to be protected by the

14   defendants.  So, I am going to order a couple of things.

15        First, with respect to the application of the

16   privilege, the defendants will only be allowed to claim the

17   privilege with respect to specific identified categories of

18   information, that is, to the extent that they say David Bird,

19   Social Security number or address, that information will be put

20   into the hopper for balancing.  There will be no protection for

21   anything or any catchall categories that include similar to,

22   like, or related.  Everything that is sought to be protected

23   must be specifically identified by category so there won't be

24   any mistakes by me or the plaintiffs as to what categories are

25   being sought to be redacted and sought to be protected.

CBD4MCCC

1          With respect to the issues that have already been

2     raised, I am going to put the parties on an expedited schedule

3     so that we can wrap this up as quickly as possible.  I have to

4     assume that to the extent that you have been banging these

5     issues back and forth, that it should not take the parties too

6     long to get back to the court.  So, with respect to the issues

7     that are specifically enumerated in the defendants' letter to

8     the court, I find that those specific enumerations have met the

9     threshold.  To the extent that the plaintiffs believe that the

10    court should find that the relevance of the information

11    outweighs any protection that should be afforded, I will give

12    the plaintiffs 48 hours to identify which ones they are and to

13    tell me what is the relevance of the information.

14          With respect to that submission from the plaintiffs,

15    the plaintiffs will be allowed in an appropriate case where

16    they specifically identify a privilege to submit in camera.

17    Otherwise, I expect that you will submit your reasons for

18    saying that the information is relevant and you will share a

19    copy with the defendants.  What I mean by that is, I can

20    envision a situation in which the plaintiffs' description of

21    why the information is relevant requires them to disclose,

22    perhaps work product or attorney strategy.  To the extent that

23    is specifically articulated, I will review that in camera.

24          Bear in mind that everything I say in terms of

25    submissions will carry with it the weight of personal

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CBD4MCCC

1    responsibility for the attorneys.  I don't want any makeweight.

2    I don't want anything withheld or submitted to me in camera

3    which on its face to me seems something which should be

4    submitted to the defendants.  After the plaintiffs makes that

5    submission, then I will make a determination without delay

6    concerning whether or not the information should be redacted.

7    The idea here is that we will only allow redactions on

8    specifically enumerated and designated kinds of information.

9            With respect to information which has already been

10   designated as confidential, I am not rescinding any of those

11   confidentiality designations.  I do recognize that in their

12   submissions the plaintiffs have indicated that they may have

13   had plans to challenge some of those designations.  To the

14   extent that the plaintiffs wish to challenge specific

15   designations, I expect that they will identify those without

16   delay.  Without delay means, given the fact that we have a

17   holiday coming up next week, I will expect a week after the

18   Friday after Thanksgiving for any such opening up of the

19   confidentiality at least in terms of designations.

20           I will expect defendants' one week after that to

21   indicate which of those things challenged by the plaintiffs

22   they intend to continue to seek protection.  That includes

23   protection not only of things that are claimed to be privileged

24   but things that are claimed to be things that might cause

25   annoyance, embarrassment or oppression without having any

CBD4MCCC

1    countervailing relevance to the matters before the court.

2              Any questions?  Then I will get on to the specific

3    rulings.  With respect to the question of sanctions which were

4    raised by the parties, I hope implicit in this is that, while I

5    think that in appropriate cases, sanctions should be imposed by

6    the court, I think in general sanctions are a distraction and

7    only in the most egregious cases should we talk about

8    sanctions.  While I may have some questions about whether or

9    not the designations by the city are overbroad, I don't see a

10   basis for sanctions from the court.

11             With respect to the city's applications for sanctions

12   against the plaintiffs, having reviewed the information

13   concerning officer Sheehan, I think this really is a product of

14   the over-designation of confidentiality.  That is, there were

15   so many issues that were disclosed about officer Sheehan, that

16   even as I was reading it, it's hard to know where one draws the

17   line about what was disclosed and what wasn't disclosed and

18   whether or not certain language was used or certain

19   particularities were used in terms of the kinds of

20   investigations that were done.  It appeared to me that with

21   respect to what was said by plaintiffs' counsel during the

22   conference at that point certainly was not clear in terms of

23   any violation of the confidentiality stipulation as it existed,

24   certainly nothing that would require the court to impose

25   sanctions.

CBD4MCCC

```
1          With respect to official information privilege, in

2    large part I have given you my rulings with respect to that,

3    that is, I do believe that with respect to the information that

4    was already identified by the defendants at our last

5    conference, that that information met the threshold and that

6    final rulings on that will await the plaintiffs' submission

7    concerning the relevance of the information that's being

8    sought.  Specifically, if the plaintiffs believe that the

9    Social Security numbers or dates of birth or phone numbers are

10   relevant to claims, then they will make those known to me so

11   that I can determine whether or not on balance it is

12   appropriate to afford protection or to order disclosure.

13         With respect to the defendants' claim that the

14   plaintiffs have been both belatedly providing information in

15   discovery, as to whether or not that requires any sanction from

16   the court, the short answer is no.  I know that in a number of

17   cases there have been delays in producing information; however,

18   in terms of whether or not there is going to be sanctions, the

19   first thing that we are going to talk about is whether or not

20   the information that has been delayed has prejudiced the

21   parties and how it has prejudiced the parties.

22         You are now the on the brink of trying to come to

23   final dates for having the discovery completed.  I know that

24   you have been trying to work out dates for the depositions.  As

25   I have indicated before, I find the idea of looking back more
```

CBD4MCCC

1    distracting and more delaying rather than looking forward.  In

2    that regard, my question to you is this:  With respect to the

3    scheduling of the depositions, how is that progressing?  If you

4    have any questions about what I have ordered, you can ask me

5    that now or you can go ahead and answer the question.

6          Yes.

7          MS. FISHER-BYRIALSEN:  Your Honor, I think since our

8    meeting and the letter we sent you there has been no

9    progression.  That's the plaintiffs' point of view.  There were

10   two depositions that were scheduled during the storm.  Those

11   have now canceled and we don't have new dates for them.

12         MR. MYERBERG:  There has been discussion on a date for

13   Angela Cuffee, one of familial plaintiffs.  That was not on the

14   schedule.  It is now set for the end of November.  With respect

15   to the depositions that were canceled, we are trying to figure

16   out a date for a detective whose deposition was canceled.  We

17   are waiting for plaintiffs to provide us a date for Vern Fonda,

18   the Inspector General for DOCS.

19         We are still doing our best.  We have obtained some

20   dates after conferring with Ms. Fisher-Byrialsen about some of

21   the other nonparty witnesses that were in the park on April 19.

22   We have obtained some additional contact information.  We are

23   trying to locate those individuals to determine whether they

24   will be amenable to subpoenas.

25         We are doing our best to put people on the calendar

CBD4MCCC

1    and trying to set firm dates.  We are going to continue to do

2    that.  Our priority is to get the parties finished.  We are

3    working towards those ends.  I think there are only three

4    familial plaintiffs remaining to be deposed, I could be wrong,

5    and the five official plaintiffs.

6         MS. FISHER-BYRIALSEN:  What concerns us, your Honor,

7    is that we have provided dates for almost all the plaintiffs

8    but that we have no commitments on dates for any of the

9    defendants as of yet.  They still remain the broad dates of

10   March or April.  We don't have any proposals at all as to

11   specific date.

12        MR. MYERBERG:  One of the issues we are having, your

13   Honor, is that we did meet and confer with Mr. Beldock and

14   Ms. Dippold, among others, about some of the parameters for the

15   assistant district attorney depositions, particularly with

16   respect to the privileges that are going to be asserted mostly

17   likely at that those depositions, if we could work around to

18   try to figure out a way to have them answer as many questions

19   as possible without asserting privilege blanket over most of

20   the questions asked at the depositions.

21        We have been speaking.  I think where we left it was

22   Mr. Beldock was going to think about the issue and get back to

23   us.  That being said, if they have an answer for us with regard

24   to that, we can schedule the ADA depositions.  It was our

25   position that we should try to meet and confer and reach some

CBD4MCCC

1    sort of agreement between the parties before progressing into

2    the depositions.  That being said, we can provide dates for the

3    depositions.  I think we have floated date ranges on the

4    schedule that both parties jointly signed off on.

5         MS. NELSON:  I just want to make it clear, your Honor,

6    that the majority of the defendants' depositions have been

7    completed.  We have produced those individuals.  Their

8    depositions have been taken.  We are talking about five

9    remaining depositions, three of which are ADA depositions.  We

10   have attempted in the past to schedule those depositions,

11   particularly the ADA depositions, and because of issues with

12   respect to plaintiffs' counsel, we had to adjourn those.  We

13   have no issue with adjourning them.  When the time came, it was

14   clear plaintiffs couldn't take those depositions at the time.

15        But we just want the court to understand that we are

16   not trying to somehow delay these depositions.  We are working

17   on this issue as to the privilege.  We think that resolving

18   those before we take the depositions is the proper way to

19   proceed.  We have conferred with plaintiffs' counsel about

20   that.  I understand they might have a different opinion as to

21   how to approach this than we do.  But it's not that we have not

22   been conferring with respect to those.  I believe with respect

23   to the calendar, which I don't have in front of me, you will

24   see that there are ranges of times to take those depositions.

25   There was one that was actually scheduled for either November

CBD4MCCC

1  or December and we decided to put that off, pending the parties

2  meeting and conferring with respect to this issue.

3           THE COURT:  If I understand correctly, you have

4  ranges; they want specific dates.  Is that what we are talking

5  about.  It's not my practice to intervene when the parties are

6  trying to schedule depositions, but I do want it to be clear to

7  the parties that either you agree on the dates or I am impose

8  the dates.  If I am impose the dates, I will order the person

9  to be there under pain of sanctions for failing to appear at

10 the deposition.  It depends on who I find is at fault in not

11 scheduling the depositions; obviously, if one party gives four

12 dates and other party gives one date, that may be more of a

13 problem.  But you don't want me to be involved in this.

14          MR. WARREN:  Your Honor, I had a follow-up discussion

15 with Mr. Myerberg just before we commenced today.  I indicated

16 to him and other counsel for defendants that Ms. Cuffee would

17 be available for deposition the Thursday and Friday after

18 Thanksgiving.  She was supposed to be deposed before that but

19 because of Sandy, there was an inability to do so.  We want her

20 to be deposed right away.  Also, I indicated that Mr. Santana

21 Sr. and Joanne Santana are available to be deposed, and we all

22 agreed we would try to do that as expeditiously as possible.

23          THE COURT:  Are these proposals and conversations

24 committed to writing?

25          MR. MYERBERG:  Your Honor, yes.

CBD4MCCC

1              THE COURT:  Because if I have to go back and look at

2      it, I want to know who proposed what and when.  It sounds as if

3      you are both saying we are doing the best we can.

4              MR. WARREN:  Your Honor, I think the earlier

5      discussions were in writing.  I was not part of that; I think

6      Mr. Moore was.  This was a follow-up to Mr. Moore's previous

7      arrangements with counsel as far as those depositions are

8      concerned.  I would just like to add one thing further.

9      Counsel has talked about them being ready for purposes of, or

10     making available their clients for depositions.  Your Honor,

11     obviously, in order to have an effective deposition, you need

12     relevant documents.  I think that has always been the sticker.

13     We have not had the relevant documents and they have not given

14     us the relevant documents so that we can conduct an effective

15     and meaningful deposition.

16             It's not as if we have been recalcitrant and we have

17     been holding it up.  We simply have said that we need the

18     relevant documents so that we can conduct a meaningful

19     deposition and proceed on to the ultimate resolution of this

20     case.  We have always maintained that posture and that position

21     and  we still do.  Again, our clients could be made available.

22     Mr. Santana Sr. could be made available in a very short period

23     of time, Joanne Santana, and as I said as to Ms. Cuffee, it is

24     my understanding there won't be any problem in terms of them

25     accommodating us to have her deposed on the first Thursday and

CBD4MCCC

1    Friday after Thanksgiving.

2              MR. MYERBERG:  Your Honor, I know you don't like the

3    tit-for-tat, so I don't want to do that.  The dates that we, we

4    jointly met, plaintiffss counsel and defendants' counsel met

5    for a period of hours.  We talked about the dates in advance of

6    your order to provide a deposition schedule.  We reached

7    agreement on date ranges.  My understanding, maybe I was wrong,

8    was that when we got closer to those depositions, plaintiffs

9    would say what about this date or that date and we would say to

10   them what about this date or that date for those depositions.

11             I don't understand where this part is coming from.  My

12   understanding is that we would reach agreement as we had

13   agreement on the date ranges.  That being said, I don't think

14   we are withholding our clients for depositions.  I don't think

15   that's what's happening.  I don't think we are withholding

16   documents that they would need to take the depositions.  For

17   example, Linda Fairstein's deposition was on the calendar a

18   year and a half ago and it was canceled by plaintiffs.  So I

19   don't think that's what we are really looking at now.

20             MS. NELSON:  The court is being left with two

21   misimpressions.  The first is that we are not meeting and

22   conferring with respect to the deposition schedule.

23   Mr. Myerberg, myself, Ms. Dippold, Ms. Fisher-Byrialsen met for

24   a couple of hours and came up with the schedule that was

25   submitted to the court.  Since then we have been having

1    discussions with respect to the schedule, whether by telephone

2    or by email, to come up with specific dates and to move the

3    players around so that we have a time where we can get these

4    depositions done.  So I don't want to leave the court with a

5    misimpression that plaintiffs have been providing dates and we

6    have not been responding.

7         THE COURT:  Let me remind you of something else since

8    you all are talking about what I don't like and what I do like.

9    I don't take representations from counsel as fact.  If I am

10   going to rule on any of these issues, it's not going to be

11   based on anything that is said in this conference.  If

12   Ms. Fisher-Byrialsen wants to make an application, she will

13   submit an affirmation to support it, and I will rule on it

14   then.  But what she says now is free of charge.

15        I don't have an impression because I have not gotten

16   anything that is backed up by anybody sworn.  Until that

17   happens, I am not ruling.  I am not making any impressions.  I

18   don't know that what she is saying is the truth or what you are

19   saying is the truth.  I will tell you this, however, that as I

20   said, if somebody is responsible for not having a deposition

21   taken, I will order the deposition taken.  If somebody does not

22   produce documents and a deposition is taken and then those

23   documents are produced, that person will be re-deposed.

24        These are the facts.  I don't know whether or not

25   anybody is going to cause that to happen.  You are all

1    advocates; you are putting a spin on it.  If you think you are

2    going to get my heart by saying something here, it's not going

3    to happen.

4             MS. NELSON:  Fair enough, your Honor, but there are

5    representations being made in open court and we would just like

6    to address them.

7             THE COURT:  I will let lawyers make those

8    counterpoints, but if you are concerned that I am now taking as

9    gospel anything that she says, you can forget that.

10            MS. NELSON:  Not so much gospel, no disrespect to

11   Ms. Fisher-Byrialsen, but if there are issues being addressed

12   in open court, we would like to address them.

13            The second one has to do with relevant information not

14   being produced before deposition.  We are a little baffled by

15   that.  We take great pains if we have the documents in our

16   possession to produce them before depositions and quite frankly

17   the last two instances of documents not being produced before

18   depositions actually came from plaintiffs' counsel where we

19   showed up at the deposition and for the first time we saw

20   documents or we were informed as to information that we had not

21   had either before the conference or 24 hours before the

22   deposition.

23            So, if there are specific instances where Mr. Warren

24   or any of the plaintiffs' counsel believes that there are

25   documents that we have not given them in advance of a

1    deposition, if they send us a letter, we will tell them as we

2    have so far in discovery if we have it or if we don't have it.

3         THE COURT:  I expect no less from either side.  This

4    goes for both plaintiffs and defendants.  Indeed, this is the

5    way I do it for any litigation.  If someone does not produce

6    documents and a deposition is taken, you are going to get

7    another shot at it if you can convince me that the failure to

8    produce was the other side's failure.  That's not for this

9    case; that's just the way it is.

10        MR. BELDOCK:  Your Honor, may I address the

11   outstanding discovery that we need in order to take the Sheehan

12   and Arroyo depositions.  The recent production as a result of

13   your Honor's ruling was very helpful to us from our point of

14   view.  We have considerable more materials now.  When we left

15   court last time I believe our adversaries said that there were

16   a bunch of specially copied, some kind of microfiche, something

17   like that, disciplinary files that they were going to find out

18   about and then produce if they could.  That's outstanding.

19        Secondly, they were supposed to produce and I have

20   been told that they are going to produce releases for the

21   Arroyo and Sheehan DWI or DUI cases.  We have not got those

22   yet.

23        Third, your Honor stated at the last meeting,

24   conference that the adversaries should advise you when the

25   documents, the disciplinary documents that don't exist anymore

1  if they don't exist anymore, became unavailable.  I have raised

2  that issue with my adversaries and I have said to them that

3  they produced a series of affidavits from police officers who

4  went into files and said they couldn't find these files,

5  including some of the files that are quite relevant to our

6  depositions that we intend to take of Arroyo and Sheehan.

7         I suggested to them that they have not answered the

8  question as to when the files became unavailable.  In my prior

9  experience there are logs kept when files are kept by the

10  police department.  The logs indicate when documents are

11  removed or not removed.  My prior experience is also that if

12  documents are destroyed, police departments give directives as

13  to when documents are to be destroyed.  That's a kind of a

14  grouping of information that we don't have.

15         It would be important to us if we found out that the

16  documents involving certain of Sheehan's investigations, for

17  example, disappeared during the course of this litigation, and

18  if not, if not, so we don't have to go on any wild goose

19  chases.  I have that all information that we need.  We need

20  that set of documents that they were going to find if they

21  would be reproduced, they were talking about the cost of it and

22  how it could be done, the releases for the DWI charges, DUI

23  charges, and representations from people who are knowledgeable

24  as to why these documents are unavailable in the Sheehan and

25  Arroyo disciplinary charges.

CBD4MCCC

1          Remember there are a series of cases and they said we

2     can't find those files, we only have these files.  They said

3     some of these files will be quartered in some special way and

4     we have to get some information about it.  Then there was my

5     follow-up question which I have written them about that I

6     understand that files are not destroyed automatically or

7     disappeared or made unavailable automatically, that there is a

8     police directive.  I have had it in other cases with the city

9     or police department cases that say destroy such and such

10    document, this is the reason why.  Then there are logs.  There

11    certainly are logs that show when documents are taken out and

12    put back in.

13         That's my waterfront of issues that I have outstanding

14    after which they are resolved we can take the Sheehan and

15    Arroyo depositions.

16         MR. DePAUL:  Your Honor, if I may address what

17    Mr. Beldock just said.  First with respect to the magneto

18    optical disks that I discussed at the last conference and were

19    mentioned in my letter, I do apologize for the lateness of that

20    submission to the court; Sandy put things in general disarray.

21    We will have those submissions to your Honor tomorrow, tomorrow

22    morning, along with a letter explaining and three declarations

23    regarding what was stored, what information we can get, what

24    information was stored, as well as the process and cost of what

25    it will take to get the information off those disk in as much

1  detail as possible as your Honor said at the last conference.

2          With respect to the releases that Mr. Beldock

3  mentioned regarding Sheehan and Arroyo's DWI arrests, it's our

4  understanding that the court ruled at the last conference that

5  defendants were to produce the files that we could obtain

6  related to those arrests.  Ms. Daitz my colleague has informed

7  Mr. Beldock that we are in the process of obtaining those files

8  and we should be able to produce them fairly shortly as soon as

9  we do receive them.  We dispute that the court ordered

10  defendants to produce releases for detectives Sheehan and

11  Arroyo to plaintiffs.  I think that's the area of disagreement

12  between what Mr. Beldock just said.

13          MS. NELSON:  We have obtained any necessary

14  authorizations that we needed and we obtained the files.  Those

15  are the files we intend to produce to plaintiffs.  That was the

16  court's intention and that's certainly what we intend to do.

17          MR. BELDOCK:  That would be satisfactory of course.

18          THE COURT:  It looks like we are ending on a note of

19  agreement.

20          MR. DePAUL:  One last final point, I believe I did

21  address this in my letter to the court dated October 5, with

22  respect to the information that can no longer located, first,

23  we have provided the court with affidavits regarding searches

24  that were conducted for the files that were requested.  Those

25  were the searches that were conducted.  We believe there is

CBD4MCCC

1    sufficient information in there regarding the searches.  We

2    have still instructed the NYPD to continue their searches.

3    Those searches are ongoing.  To the extent, as I have informed

4    Mr. Beldock, that any of those files are located, we will

5    produce them in accordance with the court's order.

6              The problem with respect to when the files became

7    unavailable is the institutional knowledge.  As the court is

8    aware, the most recent of these files are over 20 years old.

9    There is simply no person that we could find with the

10   institutional knowledge regarding when these files could no

11   longer be located.  We can continue to provide as much

12   information that we can.  The problem is the information that

13   we are looking for simply is not there.

14             THE COURT:  With respect to these kinds of issues when

15   things go missing, whether they go missing officially,

16   unofficially or whatever, we gather all the information and

17   then the court determines at the end whether or not a

18   particular order will address the inability to produce the

19   information.  So, at this point I am just getting the parties

20   to give me the information and in the end I will decide what is

21   the appropriate to thing to do about it.

22             So, I don't think any options, I was going to say no

23   options are off the table, but perhaps a nuclear option is off

24   the table, but I want to gather all the facts.  I want to know

25   as best you can what happened when and sometimes the fact of

CBD4MCCC

1    the matter is if you are not able to provide information that

2    may inure to your detriment too.  I just don't know.  I don't

3    know what information you are going to provide.  I will wait to

4    see and then you both can argue what seems appropriates.  You

5    might argue it is what it is and Mr. Beldock may argue that

6    this is some serious breach.  Let's see what the totality of

7    the information is then I will hear your arguments.

8              MR. DePAUL:  Thank you, your Honor.

9              THE COURT:  OK.

10             MS. NELSON:  Your Honor, two issues with respect to

11   your ruling.  The first one has to do with your Honor's ruling

12   that the party claiming confidentiality now has the burden of

13   justifying why that designation is necessary.  I believe

14   plaintiffs' application to the court that generally raised this

15   issue was with respect to the 2008 stipulation.  As your Honor

16   knows, there are two confidentiality stipulations in this case,

17   one from 2008, another one from 2010.  So my inquiry has to do

18   with whether your Honor's change as to who bears the burden is

19   also appropriate for the 2010 stipulation as well.

20             MS. DIPPOLD:  Your Honor, it was our intention in the

21   near future to make a motion with respect to the 2008

22   confidentiality agreement asking initially although not

23   ultimately for transcripts, trial transcripts from the criminal

24   trial, all documents that were used in the criminal trial, all

25   newspaper articles.  We did not designate those documents as

1    confidential.  I gather from the defendants' approach to this

2    that they think we should tell them the Bates numbers for those

3    documents if we are going to ask that they be made

4    deconfidentialized.

5           I think since they unilaterally imposed them that what

6    should happen is that we should ask for those documents to be

7    marked as no longer confidential and that it should be the

8    defendants' burden to figure out which of the Bates numbers

9    have been attached to those particular documents.  We are not

10   at this point asking that medical records or any photographs of

11   the victims, the names of the victims, the names of the people

12   with confidential files should be disclosed.  Some of that will

13   come later.  Certainly we are going to be making an application

14   at some point to get the disciplinary records in front of the

15   public, to get the records of the Armstrong Commission and the

16   information about who actually prepared the Armstrong

17   Commission report before the public.

18          THE COURT:  Bearing in mind my admonition that I want

19   these issues identified soon after Thanksgiving; whether you

20   make the application or not, I want to know what's coming down

21   the pike.

22          MS. DIPPOLD:  Right.  With respect to the 2010

23   stipulation which pertains to the plaintiffs' documents,

24   virtually everything that has been produced pursuant to that

25   stipulation is an employment record, is a plaintiff's medical

1    record, all very highly confidential documents.  It would be

2    inappropriate, we are not asking for those documents to be

3    released at this time with respect to the defendants, it would

4    be very inappropriate for the plaintiffs' medical records to be

5    made not confidential.

6            One other issue that came up before has to do with the

7    district attorneys' depositions.  Also they are asking to take

8    the depositions of the attorneys who represented the defendants

9    in the criminal case, our clients in the criminal case, which

10   is going to involve similar issues of attorney-client and

11   work-product privileges.  It is my understanding that what the

12   city is proposing is that their clients, the district attorneys

13   Linda Fairstein, Elizabeth Lederer, Tim Clements would be

14   allowed to testify to anything they wished to testify to except

15   for things that they want to designate as privileged or work

16   product while the documents that pertain to these very issues

17   will remain confidential.

18           So we would not be able to use the documents to

19   impeach their testimony which from our perspective violates the

20   fairness doctrine.  So I think the court has to anticipate that

21   there probably is going to be a motion with respect to those

22   particular depositions.

23           THE COURT:  Is that true, that they will be able to

24   testify about things which you are withholding documents about.

25           MS. NELSON:  I don't think it is as simple as that.  I

CBD4MCCC

1    don't believe that this issue is ripe for judicial

2    intervention.  We have certainly met and conferred with

3    plaintiffs' counsel.

4                MS. DIPPOLD:  We have.

5                MS. NELSON:  We have asked if they were going to raise

6    this at the conference and we were told they were not.  If they

7    had told us they were going to raise it, we certainly would be

8    much more prepared to talk about these issues, but there is

9    actually little authority to support our position.  The other

10   issue, your Honor, you have already ruled on the privilege of

11   certain documents, including documents that were prepared by

12   the ADAs as work product.

13               We are all trying to work together, I thought, so that

14   we could come up with some agreement whereby we are not

15   stopping this deposition every five minutes on the grounds of

16   privilege and seeking a ruling from your Honor.  We are trying

17   to cooperate, work this out.  If we can't, of course we will do

18   what we have always done, bring the issues to the court's

19   attention.  I believe the last time we spoke about this in any

20   detail, Mr. Beldock asked us to send him our legal authority,

21   we did and we invited him to respond and we are awaiting that

22   response.

23               So, it's a little unfair for the plaintiffs to bring

24   this up now knowing that we are all still meeting and

25   conferring.

CBD4MCCC

1          THE COURT:  Which specific issue are we talking about

2     now.

3          MS. NELSON:  The issue of what the ADAs can testify to

4     at their depositions.  With respect to medical records by the

5     plaintiffs, we are not seeking to de-designate any documents

6     that have been previously designated under the 2010

7     stipulation.  That wasn't what my inquiry was.  My inquiry had

8     to do with whether going forward any documents designated as

9     confidential under the 2010 stipulation will also have to abide

10    by your Honor's change, which is, whoever designates them as

11    confidential has the burden.

12         THE COURT:  The short answer is yes.

13         MS. NELSON:  We are the ones producing the documents.

14         THE COURT:  Right.  Just to be clear how I expect this

15    to work, if something is designated as confidential, then the

16    other side, if the other side disagrees, then the one who wants

17    it to be confidential has that threshold burden that would be

18    under 26(c) to tell me what would be the harm caused by it.  At

19    that point, I need to know the relevance of it for the other

20    side.  At that point, it would be a regular 26(c) order from

21    the court which does not require that it made be made public;

22    it just may mean that it gets produced.

23         MS. NELSON:  So the court understands, the majority of

24    the documents being produced pursuant to the 2010 stipulation

25    which are plaintiffs' records are actually being produced by

CBD4MCCC

1    the defendants.  We just want to be clear as to how your

2    Honor's change with respect to the confidentiality stipulations

3    would work for both confidentiality stipulations.  Thank you.

4              Your Honor, one last thing.

5              THE COURT:  It's just a question of who has the burden

6    to bring it to the court.

7              MS. NELSON:  Right.

8              THE COURT:  And it's only prospective.

9              MS. NELSON:  Thank you.

10             MS. DIPPOLD:  I would just add that I don't disagree

11   that the issue with respect to the deposition testimony of the

12   ADAs is in fact not quite ripe for the court's attention, but

13   we do expect that we are going to have to bring it to the

14   court's attention.

15             THE COURT:  Just warning me what I have to look

16   forward to.

17             MS. DIPPOLD:  Yes.

18             THE COURT:  Thanksgiving.

19             MS. NELSON:  The only other issue I would like to

20   raise, as part of your ruling, you gave plaintiffs 48 hours I

21   believe to bring to the court's attention any one of the

22   categories that are outlined in defendants' letter, to bring to

23   your attention any of those that they believe are categories

24   that they should get.  You didn't discuss whether defendants

25   would get an opportunity to respond to the extent there was

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CBD4MCCC

1    something other than what was discussed in our initial letter.

2              THE COURT:  That's correct; I did not.

3              MS. NELSON:  We will get an opportunity or will not.

4              THE COURT:  I didn't want to put in too many time

5    limits.  I figure if you get it and you want to respond, you

6    let me know.

7              MS. NELSON:  Thank you, your Honor.

8              THE COURT:  That's assuming that it's not something

9    which they are claiming some privilege which they submitted in

10   camera obviously.  Anything else.  OK.  Then I guess you have

11   your calendars out.  About another month from now, do you have

12   anything that you scheduled to meet that would conflict with a

13   month from now.

14             MR. MYERBERG:  A deposition of Mr. McCray might be

15   scheduled for December 12 and 13.

16             MR. BELDOCK:  I don't think we have anything on

17   December 17.

18             THE DEPUTY CLERK:  December 17, at 2:30 p.m.

19             THE COURT:  If there is nothing further, we will be

20   adjourned.  I hope you all have a Happy Thanksgiving and don't

21   overeat.

22                              -  -  -

23

24

25